UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

KELLY BROWN,

                Plaintiff,

         V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

             Defendant.

────────────────────────────────────────

**REPORT AND RECOMMENDATION**

11-CV-1522
(DNH/VEB)

## I. INTRODUCTION

In October of 2009, Plaintiff Kelly Brown applied for disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since May of 2009 due to physical and psychological impairments. The Commissioner of Social Security granted Plaintiff's application, in part, finding that Plaintiff was under a disability, as defined by the Social Security Act, from May 27, 2009, through November 11, 2010.    However, the Commissioner concluded that Plaintiff experienced medical improvement and was no longer disabled as of November 12, 2010.

Plaintiff, by and through her attorney, Peter A. Gorton, Esq., commenced this action seeking judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On January 3, 2013, the Honorable Gary L. Sharpe, Chief United States District

─────────────

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on October 26, 2009, alleging disability beginning on May 27, 2009. (T at 115-118).[2] The applications was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 7, 2011, in Binghamton, New York, before ALJ Marie D. Greener.[3] (T at 35-61). Plaintiff appeared with her attorney and testified. (T at 41-60).

On July 11, 2011, ALJ Greener issued a written decision finding that Plaintiff was under a disability, as defined by the Social Security Act, from May 27, 2009, through November 11, 2010. However, the ALJ determined that Plaintiff experienced medical improvement and was no longer disabled as of November 12, 2010. (T at 14-34). The Appeals Council denied Plaintiff's request for review on November 9, 2011. (T at 6-9). After reviewing additional information, the Appeals Council again denied Plaintiff's request for review on January 17, 2012, making the ALJ's decision the Commissioner's final decision. (T at 1-5).

Plaintiff, through counsel, timely commenced this action on December 27, 2011. (Docket No. 1). The Commissioner interposed an Answer on May 8, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on September 4, 2012. (Docket No. 12). The Commissioner

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]Plaintiff and her attorney appeared in Binghamton. The ALJ presided via videoconference from Syracuse. (T at 18).

filed a Brief in opposition on October 18, 2012. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act as of May 27, 2009, the onset date.  The ALJ also concluded that Plaintiff had not engaged in substantial gainful activity since that date. (T at 21).  The ALJ concluded that Plaintiff had the following severe impairments, as defined under the Act: residuals status post two surgeries to the lumbar spine and (with respect to the period of disability only) depression and anxiety. (T at 21-24).

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

However, the ALJ found that Plaintiff's impairments did meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings") at any time relevant to the case. (T at 24).

The ALJ determined that, from May 27, 2009, through November 11, 2010, Plaintiff retained the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567 (a) in a low stress occupation where she did not have to perform fast-paced work, multitask, or confront others. (T at 24-25). The ALJ found that Plaintiff was unable to perform her past relevant work as a marketer for a radio station during this period. (T at 25-26). Considering Plaintiff's age (34), education (high school), work experience (no transferrable skills) and RFC (sedentary, with limitations), the ALJ concluded that there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the period from May 27, 2009, through November 11, 2010. (T at 26-27). As such, the ALJ found that Plaintiff was under a disability and entitled to receive benefits during this closed period. (T at 27).

However, the ALJ concluded that Plaintiff experienced medical improvement as of November 12, 2010, and was at that point able to perform the full range of light work, as defined in 20 CFR § 404.1567 (b). (T at 27-29). Further, the ALJ found that, as of that date, Plaintiff could perform her past relevant work as a marketer for a radio station. (T at 29). As such, the ALJ determined that Plaintiff's disability ended on November 12, 2010, and that she was not entitled to benefits between that date and the date of the ALJ's decision (July 11, 2011). (T at 29-30).

As noted above, the ALJ's decision became the Commissioner's final decision on February 29, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-

9).

**2.      Plaintiff's Arguments**

Plaintiff does not contest the portion of the Commissioner's decision, wherein the Commissioner determined that Plaintiff was disabled between May 27, 2009, and November 11, 2010 (the "closed period of disability").    Plaintiff challenges the Commissioner's conclusion that she experienced medical improvement and was no longer disabled during the period between November 12, 2010, and July 11, 2011 (the "period at issue").

Plaintiff offers two (2) principal arguments in support of her position.  First, Plaintiff contends that the Commissioner did not properly evaluate the opinion of her treating orthopedic surgeon. Second, Plaintiff challenges the ALJ's credibility assessment.  This Court will address both arguments in turn.

**a.      Treating Physician's Opinion**

Plaintiff was involved in an automobile accident in September 2007, which injured her spine and caused depression and anxiety disorders. (T at 21-22).  The closed period of disability began on May 27, 2009, when Plaintiff's treating orthopedic surgeon, Dr. Eric Seybold, performed a "proactive discography at L4-5 that identified [a] herniated disc on the right at L4-5 with right leg pain and L-4 nerve compression." (T at 22).  Following that surgery, Plaintiff experienced a variety of medical issues, including persistent hip pain, feelings of depression, and difficulties handling stress. (T at 22-23).

On August 16, 2010, Dr. Seybold performed a second surgery (right-sided L4-5 laminectomy, discectomy, decompression of the L4 and L5 nerve roots, and stabilization

by placement of an Ex-Stop size 10). (T at 23).

On November 12, 2010, Gloria Block, Plaintiff's treating nurse practitioner, described Plaintiff as "doing pretty well" and feeling "happy" that she had "recovered so well from back surgery." (T at 954). Plaintiff reported that her anxiety and crying had decreased, that her mood had improved, and that had no side effects from her medications. (T at 954). On November 15, 2010, Plaintiff saw her physical therapist, who reported that Plaintiff's pain, range of motion, and strength were all improved. (T at 960).

On December 23, 2010, Plaintiff saw Dr. Seybold for a "final evaluation." Dr. Seybold reported that "[o]verall," Plaintiff was "doing great" and felt "markedly improved." (T at 997). In particular, Dr. Seybold noted definite improvement with respect to leg pain and marked improvement with respect to back pain. (T at 997). Dr. Seybold found that Plaintiff was capable of working 8 hours a day, 5 days a week, except that she was limited to lifting less than 30 pounds. (T at 997).

On April 6, 2011, Dr. Seybold reported in a letter that Plaintiff was "unable to work for 12 weeks." (T at 996). On that same date, Dr. Seybold completed a questionnaire, in which he opined that Plaintiff could sit for less than 6 hours in an 8-hour day and needed to alternate positions between sitting and standing. (T at 956). He further indicated that Plaintiff was not able to stand for 2 hours in an 8-hour day and that her medical condition had a moderate to severe impact on her ability to sustain work pace. (T at 957).

Under the "treating physician's rule," the Commissioner must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v.

<u>Barnhart</u>, 362 F.3d 28, 31-32 (2d Cir. 2004); <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, the Commissioner may nonetheless give it "extra weight" under certain circumstances. In this regard, the following factors should be considered when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); <u>see also</u> <u>de Roman</u>, 2003 WL 21511160, at *9; <u>Shaw</u>, 221 F.3d at 134; <u>Clark v. Comm'r of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir.1998); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ afforded "[g]reat evidentiary weight" to Dr. Seybold's opinion. (T at 25). However, the ALJ gave "greater weight" to Dr. Seybold's December 2010 treatment note, wherein the surgeon indicated that Plaintiff could return to work, with a 30-pound lifting restriction. (T at 27, 997). The ALJ gave "lesser weight" to the doctor's April 2011 questionnaire responses, noting that the questionnaire had been "submitted by [Plaintiff's] lawyer for the purpose of obtaining benefits . . . ." (T at 27). The ALJ found that Dr. Seybold's responses "may have been accurate until November 12, 2010, but not in regard to the period after that date." (T at 27).

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." <u>de Roman v. Barnhart</u>, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

The Commissioner defends the ALJ's evaluation of Dr. Seybold's opinions by noting (correctly) that the ALJ is free to resolve conflicts in the evidence and choose among properly submitted medical opinions. See White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)).

In addition, the Commissioner points out that Dr. Seybold's April 2011 assessment is not consistent with his treatment note from that same date, which indicated that Plaintiff had been "doing very well" and complained only of "some mild hip bursistis type pain." (T at 997). The treatment note also reported that straight leg raise testing was negative, there was no evidence of neurologic deficit, and that Plaintiff had "been active . . . ." (T at 997).

This Court finds the Commissioner's arguments unpersuasive. Although the ALJ may choose among properly submitted medical opinions, the ALJ may not "arbitrarily substitute his [or her] own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). While the ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

The record certainly indicates that Plaintiff's condition improved immediately following her second surgery. Dr. Seybold's December 2010 treatment note provides evidence of that improvement. (T at 997). However, the doctor's April 2011 assessment

suggests the improvement was temporary and that Plaintiff was once again experiencing disabling symptoms. (T at 956-58). The ALJ gave "lesser weight" to the latter assessment, but did not provide a satisfactory explanation for this decision.

First, the ALJ's sole justification for giving "lesser weight" to the April 2011 assessment is that the assessment was provided via "answers to a questionnaire submitted by [Plaintiff's] lawyer for the purpose of obtaining benefits . . . ." (T at 27). The ALJ does not explain why the origin of the questionnaire is a basis for discounting Dr. Seybold's answers. The ALJ appears to be questioning Dr. Seybold's integrity by suggesting he was inclined to exaggerate the severity of Plaintiff's limitations because her lawyer asked him to and/or because he knew that his responses were being submitted in connection with an application for disability benefits. There is no basis in the record to support any such inference or suggestion. The ALJ also found that the limitations set forth in the April 2011 were accurate until November 12, 2010, but not thereafter. However, Dr. Seybold stated that his assessment applied to the entire period at issue. (T at 958).

Second, to the extent the ALJ might have discounted Dr. Seybold's April 2011 assessment because of an inconsistency with his contemporaneous treatment note,[7] she should have re-contacted the physician first. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek

_____

[7]Although the Commissioner defends the ALJ's decision on this ground, the ALJ did not actually cite this as an explicit justification for her decision.

additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The disparity between the late 2010 and early 2011 records gave rise to the significant possibility that Plaintiff's condition (which the ALJ determined was disabling at one time) had not, in fact, permanently improved. Indeed, the medical opinion evidence from Plaintiff's treating orthopedic surgeon strongly suggested that the improvement Plaintiff experienced in late 2010 following her second surgery was transitory, which was consistent with Plaintiff's testimony on this point. (T at 54). Having already concluded that Plaintiff's impairments were sufficiently serious to be disabling for a substantial period of time, the ALJ was obliged to fully develop the record by, for example, re-contacting Dr. Seybold, before dismissing the possibility that the medical improvement experienced in the immediate aftermath of the second surgery was temporary.

Lastly, the ALJ did not comply with the Social Security Regulations requiring a function-by-function assessment of Plaintiff's residual functional capacity.

Pursuant to the Regulations, an ALJ's assessment of the claimant's RFC must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis. With regard to physical limitations, this means the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle,

stoop, or crouch. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); <u>Martone v. Apfel</u>, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, *e.g.,* sedentary, light, medium, heavy, and very heavy. <u>Hogan v. Astrue</u>, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

The ALJ did not provide a function-by-function analysis with regard to Plaintiff's RFC during the period at issue. Rather, he simply expressed the RFC in terms of an exertional level of work (*i.e.* light work). (T at 27). The Second Circuit has not yet decided whether the failure to provide a function-by-function assessment of a claimant's RFC is *per se* grounds for a remand.

At least three circuit courts of appeal have concluded that a function-by-function analysis is desirable, but not an absolute requirement if the rationale for the ALJ's RFC assessment can be readily discerned. <u>See</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir.2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); <u>Depover v. Barnhart</u>, 349 F.3d 563, 567 (8th Cir.2003) (an ALJ does not fail in his or her duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found); <u>Delgado v. Comm'r of Soc. Sec.</u>, 30 F. App'x 542, 547 (6th Cir.2002).[8]

---

[8]The Third Circuit and Seventh Circuit have reached similar conclusions, albeit in unpublished decisions. <u>See</u> <u>Bencivengo v. Comm'r of Soc. Sec.</u>, 251 F.3d 153 (3d Cir.2000)) ("Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."); <u>Zatz v. Astrue</u>, 346 F. App'x 107, 111 (7th Cir.2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

District courts in the Second Circuit have reached conflicting conclusions. See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); McMullen v. Astrue, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008); Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her past work was supported by substantial evidence."); Matejka v. Barnhart, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); but see Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); but see Martin v. Astrue, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

This Court has concluded that, in limited circumstances, the ALJ's failure to provide

a function-by-function analysis might constitute harmless error,[9] provided the absence of analysis does not frustrate meaningful review of the ALJ's RFC assessment. See Goodale v. Astrue, No. 11-CV-821, 2012 WL 6519946, at *7 (N.D.N.Y. Dec. 13, 2012). However, this Court has also taken great care to emphasize that the function-by-function assessment is an important regulatory requirement (which, ultimately, is designed to ensure that careful consideration is given to any and all of the claimant's work-related limitations) that should not (and, indeed, may not) be lightly set aside or in treated casually. See Desmond v. Astrue, No. 11-CV-0818, 2012 WL 6648625, at *6 n. 8 (N.D.N.Y. Dec. 20, 2012).

Here, the ALJ's failure to provide a function-by-function assessment frustrates review of her RFC determination. The ALJ did not say that she was completely disregarding Dr. Seybold's April 2011 opinion, rather she said that she was giving it "lesser weight." (T at 27). The ALJ did not explain what "lesser weight" meant in this context or reconcile the treating physician's April 2011 opinion with her conclusion that Plaintiff could perform the full range of light work.

Because the ALJ did not provide a function-by-function assessment regarding Plaintiff's RFC, this Court cannot determine, for example, how the ALJ dealt with Dr. Seybold's conclusion that Plaintiff could not sit more than 6 hours in an 8-hour day, needed to alternate positions between sitting and standing, and could not stand for 2 hours in an 8-hour day and that her medical condition had a moderate to severe impact on her ability to sustain work pace. (T at 956-57). These limitations are inconsistent with an ability to

---

[9] Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims. See, e.g., Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

perform light work. <u>See</u> 20 CFR § 404.1567 (b)(noting that light work involves "a good deal of walking or standing, or . . . sitting most of the time").

For these reasons, this Court recommends a remand for reconsideration of Dr. Seybold's April 2011 opinion and further development of the record, including a function-by-function assessment of Plaintiff's RFC.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. <u>See</u> <u>Ber v. Celebrezze</u>, 333 F.2d 923 (2d Cir.1994). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. <u>See</u> <u>Brandon v. Bowen</u>, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis v. Apfel</u>, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She lives with her husband and 7-year old

daughter. (T at 41). She drives occasionally, but tries not to travel more than 15-20 minutes at a time due to back pain. (T at 41). She last worked in May of 2009, before her first surgery. (T at 42). Plaintiff experiences constant pain, even during the "simplest tasks." (T at 45). She finds the pain and side effects from her pain medication distracting. (T at 45). The pain is mostly in her lower back, radiating to her hips and knees. (T at 46). Her first surgery was unsuccessful; the second surgery was "awful." (T at 46). She takes hydrocodone two to three times per day and receives cortisone injections. (T at 47). She takes Lexapro for depression, but continues to experience crying spells and difficulty with daily tasks. (T at 48-49). She has trouble sleeping and cannot concentrate during extreme episodes of pain. (T at 53). She experienced improvement following the second surgery, but "slowly started to feel worse again." (T at 54). Plaintiff does not believe she could maintain the pace necessary to perform work as a teller or salesperson. (T at 56). She can stand or sit for only about 10-15 minutes before needing to reposition. (T at 56). Plaintiff and her family relocated to Baltimore, Maryland, but they visit New York approximately once a month. (T at 58-59).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible as they related to the period in question (i.e. after November 12, 2010). (T at 29). In particular, the ALJ found Plaintiff's testimony "greatly exaggerated" and "entirely inconsistent with the medical evidence of record." (T at 29). The ALJ noted that "[d]espite all the reported pain, [Plaintiff had] not seen any doctor for pain management in her new location in Baltimore, Maryland." (T at 29). In addition, the ALJ found it noteworthy that the

record contained "no recent mental health records." (T at 29).

The ALJ's assessment of Plaintiff's credibility was flawed. First, the finding that Plaintiff's testimony was "entirely inconsistent with the medical evidence of record" is incorrect. In fact, Plaintiff's testimony was supported by the April 2011 assessment of her treating orthopedic surgeon, who opined that Plaintiff could not sit more than 6 hours in an 8-hour day, needed to alternate positions between sitting and standing, could not stand for 2 hours in an 8-hour day, and that her medical condition had a moderate to severe impact on her ability to sustain work pace. (T at 956-57). As discussed above, the ALJ did not adequately address Dr. Seybold's opinion or develop the record in that regard. This failure affected the credibility analysis as well.

Second, the ALJ should not have discounted Plaintiff's credibility based upon the apparent lack of treatment in Maryland without first giving her an opportunity to explain why she had not sought treatment. See SSR 96-7p (noting that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed," but directing the ALJ not to draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

Third, Plaintiff had an excellent work record (T at 119-20) and should have been afforded enhanced credibility on that basis. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Accordingly, the question of Plaintiff's credibility should be revisited on remand.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above and particularly in light of the the ALJ's failure to adequately address the April 2011 assessment of Plaintiff's treating orthopedic surgeon, it is recommended that the case be remanded for further proceedings.


**IV. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Commissioner's Motion be DENIED, that Plaintiff's Motion be GRANTED, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 6, 2013
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 6, 2013

Victor E. Bianchini
United States Magistrate Judge